IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CHRISTIAN HERITAGE SCHOOL C/O YOUTH WITH A MISSION,<br><br>Plaintiff,<br><br>v.<br><br>CENTRAL MUTUAL INSURANCE COMPANY,<br><br>Defendant. | CIVIL ACTION NO. 6:24-CV-00045-JDK-JDL |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Central Mutual Insurance Company's ("Defendant") motion to exclude Plaintiff's expert Duane Smith. (Doc. No. 29.) Plaintiff Christian Heritage School C/O Youth With a Mission ("Plaintiff") has filed a response (Doc. No. 34), to which Defendant has filed a reply (Doc. No. 40).

**BACKGROUND**

This case involves an insurance coverage dispute between an East Texas church and its insurance company. Between May 1, 2020, to May 1, 2022, Defendant insured Plaintiff's property, which consists of a twenty-one building campus in Tyler, Texas. (Doc. No. 31, at 3). Specifically, this dispute arises from alleged storm-related damage with a date of loss of April 5, 2022. *Id.* at 5. Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff designated Duane Smith of Bovini Consultants as a retained expert to testify on his inspection, investigation, and observations of the covered property and the damage that occurred to that property that was caused by a hail and wind event on April 5, 2022. (Doc. No. 29-1, at 2.) The designation further indicated that Mr. Smith

1

would testify to the reasonable costs to repair and/or replace the property that was damaged by the hail and wind event reported to have occurred on April 5, 2022. *Id.*

Mr. Smith is a licensed Public Insurance Adjuster with approximately nineteen years of experience. (Doc. No. 29-2, at 1.) His report includes a discussion of his qualifications and experience, the materials reviewed, his findings based upon the materials and his experience, and weather information. *Id.* Based upon this information, he includes line items for the property with the estimated costs to repair and/or replace the property that was damaged due to the April 5, 2022 wind and hail event. *Id.*

Defendant moves to exclude Mr. Smith from offering opinion testimony on the timing and cause of the claimed damages to the campus, the necessity of replacing roofs rather than repair, and the cost of OSHA safety compliance and upcharges in his estimate. (Doc. No. 29).

## LEGAL STANDARDS

### I. Expert Challenges under *Daubert*

In accordance with Federal Rule of Evidence 104(a), when faced with expert testimony, the trial court acts as a "gatekeeper" and must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95 (1993). To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* Trial judges have traditionally been afforded wide discretion to admit or exclude expert evidence. *Eymard v. Pan American World Airways*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and reports. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters v. Five Star Marine*, 898 F.2d 448, 449 (5th Cir. 1990), citing Fed.R.Evid. 702 advisory committee's notes (2000). Assisting the trier of fact means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *Eymard*, 795 F.2d at 1233). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

When evaluating expert testimony, the overarching concern is generally focused on whether it is relevant and reliable. *See Daubert*, 509 U.S. at 590. To be reliable and therefore admissible under Rule 702, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and methods; (4) and have reliably applied the principles and methods to the facts. Fed.R.Evid. 702. "[T]he test of reliability is 'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 151.

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. *See* Fed.R.Evid. 702 Advisory Committee's Notes, 2000 Amendments (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). While

the district court must act as a gatekeeper to exclude all unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702 advisory committee's notes (2000) (citing *Daubert*, 509 U.S. 579; *Kumho Tire Co.*, 526 U.S. 137). Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; rather, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## DISCUSSION

As discussed, Defendant moves to exclude Mr. Smith from offering opinion testimony on the timing and cause of the claimed damages to the campus, the necessity of replacing roofs rather than repair, and the cost of OSHA safety compliance and upcharges in his estimate. (Doc. No. 29.) Plaintiff responds that Mr. Smith offers relevant and reliable testimony that a hail and wind event on April 5, 2022 damaged Plaintiff's property necessitating roof replacements. (Doc. No. 34).

### I. Methodology Regarding Causation and Replacement

With respect to Mr. Smith's methodology on causation and damages, Defendant argues that he concedes his own weather data shows no hailfall at the campus and that he did no testing, that he had produced no weather data that shows that wind or hailfall occurred on the campus on April 5, 2022 and that he failed to consider all information to exclude other causes of damage to the

4

campus such as pre-existing damage or post date of loss damages. (Doc. No. 29, at 9.) Plaintiff points out that Mr. Smith examined storm data from May 3, 2017 to April 5, 2022 to consider other potential storms, but concluded that "the distinctive size, shape, and pattern of the hail damage conclusively established the April 5, 2022 hailstorm as the cause of damage." (Doc. No. 34, citing Doc. No. 34-2, Deposition of Duane Smith, at 119:6–10.) Plaintiff also cites to Mr. Smith's report where he concluded this same fact and explained, based upon coloration of old hail damage (discolored, grey, or whited out), versus the characteristics of hail damage that appeared to be "fresh" and consistent in size and shape with the April 5, 2022 storm. (Doc. No. 34-1.) Mr. Smith also assessed the storm created openings for the roof and water damage, which was consistent with the April 5, 2022 storm due to lack of "long-term" aging." *Id.*  Plaintiff argues that Defendant's arguments go to the weight of Mr. Smith's opinions not the admissibility of them.

The contention that Mr. Smith provided no methodology to explain the cause of damage related to the April 5, 2022 storm is inconsistent with the record. Here, Mr. Smith opined that the "distinctive size, shape, and pattern of the hail damage on the roof conclusively established the April 5, 2022 hailstorm as the cause of damage, thereby excluding any other potential storm damage." (Doc. No. 34-1, at 7.) Mr. Smith reviewed weather information from the National Oceanic Atmospheric Administration ("NOAA") in order to determine which storms, if any, other than April 5, 2022 storm, affected the property. *Id.* His search covered the period from May 3, 2017, to April 5, 2022, which he provided rules out any other possible date of loss. *Id.* Mr. Smith testified that when he inspected the property in 2023, he was able to distinguish between old and new damage based upon the repairs that already took place and the fact that the marks seemed to be "fresh" because they were not discolored, old, grey, or turning white like might be expected with aging. (Doc. No. 34-2, at 81:24–82: 11.) Mr. Smith further testified, in confirming that the

5

distinctive size, shape, and pattern of the hail damage conclusively established April 5th, 2022 as the cause of damage, that the evidence he reviewed showed that while there were prior claims there were no storms in the relevant area. *Id.* at 119:6–20. Mr. Smith further testified that he was able to exclude storms after April 5, 2022 because they were all several miles away. *Id.* at 119:11–120:1.

Similarly, Mr. Smith opined that water damage observed at the property does not exhibit signs of long-term aging, or indicate a long-term ongoing issue nor are there signs of historical repairs at the affected locations. (Doc. No. 34-1, at 7.) He states that he considered alternative causes of loss, including foot traffic, wear and tear, and deterioration and concluded that no evidence consistent with these causes of damage was found. *Id.* Mr. Smith further testified that he did not observe anything consistent with old damage that was long term or that had been neglected, and that repairs seemed to be evidence of normal maintenance. (Doc. No. 32-4, at 66:13–24).

Finally, as to the necessity of replacement versus repair, Mr. Smith explained how his conclusions were based on his own inspection and experience. Mr. Smith line itemed the inspection damage in his expert report, and he explained how upon inspection he observed a significant number of unsealed tabs that were consistent with high wind, as well as hail damage to the roofs, including shingles and metal roofs. (Doc. No. 34-1; Doc. No. 34-2, at 102: 4–24.) He stated that, based upon the damage he observed, it wouldn't have been feasible to try to conduct repairs because the damage to the roofs was too widespread. *Id.* at 119:1–5. This is the basis of his opinion recommending replacement.

Mr. Smith's report and testimony explain how he determined, based upon his experience, inspection, and review of the weather data, that the April 5, 2022 storm caused damage to the property. This includes observations regarding prior storms from the weather data, the condition

of the damage upon inspection as it relates to characteristics of time and wear, and the possibility of damage from post-date storms which he found occurred not in the relevant area and were several miles away. This evidence demonstrates that Mr. Smith examined other potential causes, thereby rendering his methodology and opinions reliable for purposes of determining admissibility under *Daubert* and Rule 702. *See, e.g.*, *Hub Tex., LLC v. Arch Specialty Ins. Co.,* No. 5:21-CV-180-H-BQ, 2023 WL 2772052, at *6 (N.D. Tex. Mar. 21, 2023) (denying insured's *Daubert* motion where expert "identified storm damage, considered other causes of damage other than hail and wind," but he was "able to rule them out based on the physical characteristics"); *Kim v. Nationwide Mut. Ins. Co.*, No. 3:21-CV-0345-D, 2022 WL 2670393, at *6 (N.D. Tex. July 11, 2022) (holding that expert's "personal inspection of the [p]roperty, his in-depth explanation of his procedures, and his experience employing the same methodology show that he used sufficiently reliable methods"); *Gun Barrell Jacksonville LLC v. Depositors Ins*. Co., No. 6:20-cv-469-JDK, 2021 WL 5154218, at *3 (E.D. Tex. Oct. 9, 2021) (determining expert's testimony was reliable, where he based his opinion on "his own physical inspection of the property; . . . engineering report and exhibits; [his] own experience, knowledge, skill and training; [his] assessment of the property and damage; [and his] review of the insurance company's damage estimates as to depreciation" (internal quotation marks omitted)); *Labourdette v. State Farm Lloyds*, No. 4:19-CV-2551, 2021 WL 2042974, at *2 (S.D. Tex. May 21, 2021) (rejecting insurer's contention that expert failed to account for alternative causes of damage to the roof, where his "report and deposition indicate[d] that he did consider alternative causes of damages to the [insureds'] roof, but rejected them").

Defendant may have pointed out weaknesses in Mr. Smith's opinions, but it does not render them *ipse dixit* merely because Defendant disagrees with his conclusion.[1] This is simply a matter of credibility of the expert, which the jury can properly consider. *See Hub Texas, LLC*, 2023 WL 2772052, at *8 (finding that any weaknesses in the expert's opinions that the storms in question caused the damages at the property "go to weight and can be adequately highlighted through cross-examination and presentation of contrary evidence").

## II.     OSHA Compliance

Next, Defendant argues that Mr. Smith includes in his estimate Kevin Dandridge's incomplete estimate for OSHA safety protocols and procedures, which is unreliable. (Doc. No 29, at 12.) Defendant states that even Mr. Dandridge finds this reliance to be "lazy" or "improper." *Id.* at 13. Plaintiff argues that Mr. Smith properly justified the inclusion of OSHA compliance costs based upon Kevin Dandridge's report, which he acknowledges in his deposition. (Doc. No. 34, at 16).

"As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *See Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) (citing *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir.1985)).  Indeed, an expert may also rely upon the opinion of another expert, as long as the other expert opinion "upon which [the] expert bases an

---

[1] Defendant also cites to the case of *Hilltop Church of Nazarene v. Church Mutual Ins. Co*., No. 6:21-cv-00322, 2022 WL 17823931, at *2 (E.D. Tex. Dec. 20, 2022) to support the argument that Mr. Smith's report should be struck due to the gap in time between the date of the storm and the date of Mr. Smith's inspection. Even to the extent that these cases could be said to be similar, which the court cannot say because it does not have the expert report of the expert from the *Nazarene* case, such a case would be at best persuasive, but nonetheless distracts from the court's necessary task at hand in this case, which is to assess the reliability of Mr. Smith's opinion and testimony in *this case*. Because, for the reasons explained, the court has found that Mr. Smith has provided sufficient opinion and testimony explaining his methodology so as to not exclude his testimony in this case, the court declines to go through an extensive discussion of the facts of a separate case.

8

opinion or inference . . . [are] of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Fed.R.Evid. 703.

Here, Mr. Smith relies on Mr. Dandridge's OSHA compliance costs, for which Mr. Dandridge has opined in this matter. Such reliance is not atypical. As explained in the court's memorandum opinion and order denying Defendant's motion to limit Mr. Dandridge's testimony, Mr. Dandridge's testimony in this regard is permissible. As Mr. Dandridge himself explained, these opinions can be reconciled. (Doc. No. 30-3, at 149:1–150:1.) To the extent the reliance is flawed, or Mr. Dandridge's opinions are based upon a weak foundation, then, again, that remains a matter for cross examination.

### III.   20% Inflation Adjustment

Lastly, Defendant argues that Mr. Smith includes a 20% blanket inflation adjustment for which he provides no sufficient methodology. (Doc. No. 29, at 13.) Plaintiff responds that Mr. Smith explained his adjustment based upon his direct experience with demand surges and increased material costs in the aftermath of significant storms. (Doc. No. 34, at 17).

Had Mr. Smith simply added a blanket 20% inflation adjustment without explanation, then such a methodology would be unreliable. However, Mr. Smith has explained his reasoning for this adjustment. As he testified to this point, "because all the major suppliers are sending out demand surge notices and informing all the contractors that due to the supply and demand, that all the materials have went up at least 20 percent, if not more." (Doc. No. 34-2, at 147:7–19.) Mr. Smith further explained his experience with typical surge pricing due to storm demand having been involved with hurricanes. *Id.* at 150: 4–12.

Again, Mr. Smith has provided his reasoning for his inflation adjustment, which is not inherently unreliable. The credibility of his reasoning can be examined during the course of cross-examination.

9

## CONCLUSION

For the reasons explained herein, Defendant's motion to strike the expert testimony of Duane Smith (Doc. No. 29) is **DENIED.**

**So ORDERED and SIGNED this 6th day of February, 2025.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE