IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| **CHRISTIAN HERITAGE SCHOOL C/O YOUTH WITH A MISSION,** § § § § **Plaintiff,** § § **v.** § § **CENTRAL MUTUAL INSURANCE COMPANY,** § § § § **Defendant.** | **CIVIL ACTION NO. 6:24-CV-00045-JDK-JDL** |

**MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Central Mutual Insurance Company's ("Defendant") motion to exclude Plaintiff's expert Kevin Dandridge. (Doc. No. 30.) Plaintiff Christian Heritage School C/O Youth With a Mission ("Plaintiff") has filed a response (Doc. No. 35), to which Defendant has filed a reply (Doc. No. 41).

**BACKGROUND**

This case involves an insurance coverage dispute between an East Texas church and its insurance company. Between May 1, 2020, to May 1, 2022, Defendant insured Plaintiff's property, which consists of a twenty-one building campus in Tyler, Texas. (Doc. No. 31, at 3). Specifically, this dispute arises from alleged storm-related damage with a date of loss of April 5, 2022. *Id.* at 5. Pursuant to Federal Rule of Civil Procedure 26(a)(2), Plaintiff designated Kevin Dandridge of Line Safety as a retained expert to testify as to the proper OSHA safety protocol and procedures that must be implemented when repairing and/or replacing Plaintiff's property. (Doc. No. 30-1, at 3).

1

Defendant moves to exclude Mr. Dandridge from offering expert opinion testimony as to (1) the cost for OSHA compliance for repairs to claimed damage on the campus sustained on April 5, 2022; or (2) the cost for OSHA safety protocols and procedures for buildings that he did not inspect. (Doc. No. 30).

## LEGAL STANDARDS

### I.    Expert Challenges under *Daubert*

In accordance with Federal Rule of Evidence 104(a), when faced with expert testimony, the trial court acts as a "gatekeeper" and must perform "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–95 (1993). To admit expert testimony, a court "must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to: (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Id.* Trial judges have traditionally been afforded wide discretion to admit or exclude expert evidence. *Eymard v. Pan American World Airways*, 795 F.2d 1230, 1233 (5th Cir. 1986).

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony and reports. "Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier." *Peters v. Five Star Marine*, 898 F.2d 448, 449 (5th Cir. 1990), citing Fed.R.Evid. 702 advisory committee's notes (2000). Assisting the trier of fact means "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument." *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992) (quoting *Eymard*, 795 F.2d at 1233). The district court's responsibility "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the

2

same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

When evaluating expert testimony, the overarching concern is generally focused on whether it is relevant and reliable. *See Daubert*, 509 U.S. at 590. To be reliable and therefore admissible under Rule 702, expert testimony as to a scientific, technical, or other specialized area must: (1) assist the trier of fact to understand the evidence or to determine a fact in issue; (2) be based upon sufficient facts or data; (3) be the product of reliable principles and methods; (4) and have reliably applied the principles and methods to the facts. Fed.R.Evid. 702. "[T]he test of reliability is 'flexible,' and the *Daubert* factors neither necessarily nor exclusively apply to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination." *Kumho Tire Co.*, 526 U.S. at 151.

As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility. *See* Fed.R.Evid. 702 Advisory Committee's Notes, 2000 Amendments (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)). While the district court must act as a gatekeeper to exclude all unreliable expert testimony, "the rejection of expert testimony is the exception rather than the rule." Fed.R.Evid. 702 advisory committee's notes (2000) (citing *Daubert*, 509 U.S. 579; *Kumho Tire Co.*, 526 U.S. 137). Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; rather, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties'

experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

## DISCUSSION

As discussed, Defendant moves to exclude Mr. Dandridge from offering expert opinion testimony as to (1) the cost for OSHA compliance for repairs to claimed damage on the campus sustained on April 5, 2022; or (2) the cost for OSHA safety protocols and procedures for buildings that he did not inspect. (Doc. No. 30.) Plaintiff argues that Mr. Dandridge provides reliable testimony wherein he thoroughly explains the language in his report and clarifies that the cost sheet is only for the eleven building he personally inspected, which is what his estimate is limited to. (Doc. No. 35).

As an initial matter, the parties' briefing reads like ships passing in the night. On the one hand, Defendant is moving to exclude Mr. Dandridge from testifying about costs for OSHA compliance, and, on the other, Plaintiff is stating that Mr. Dandridge is only testifying about OSHA safety protocols. Yet, what lies at the heart of the dispute is the cost sheet upon which Mr. Dandridge relies in his report. The majority of Mr. Dandridge's report relates to OSHA safety concerns and protocols, as well as his inspection of the property. The last ten pages of his report, however, outlines the line-item costs associated with OSHA compliance. (Doc. No. 30-2.) The initial question for the court then must be whether this is outside the scope of testimony for which he has been designated. In this case, Mr. Dandridge was designated as an expert to testify as to the proper OSHA safety protocol and procedures that must be implemented when repairing and/or

4

replacing Plaintiff's property. (Doc. No. 29-1, at 3.) Because the designation includes implementations for repair/replacement, it logically follows that Mr. Dandridge would have included a line-item cost sheet for adhering to OSHA compliance protocols. Thus, the court cannot say that the inclusion of such a sheet was inherently prejudicial to Defendant in this case or that Defendant was not fairly apprised of this. Indeed, the sheet was disclosed in Mr. Dandridge's expert report and Defendant has deposed Mr. Dandridge and specifically inquired about the generation of the cost sheet. (Doc. No. 35-2).

Defendant also takes issues with the reliability of the cost sheet. Defendant argues that Mr. Dandridge's opinion is unreliable because he concedes that his cost report includes a sheet that is simply an "example" and is not final pricing. (Doc. No. 30, at 2.) Defendant also points out that Mr. Dandridge admitted that OSHA compliance may have already been included in some construction estimates, but he did not examine any estimate to determine to what extent those costs were already accounted for. *Id.* Plaintiff responds that Defendant's attack on Mr. Dandridge using a "not final" cost sheet in his report is misplaced because Mr. Dandridge was designated to provide expert testimony on OSHA safety protocols and their associated costs, not to provide final cost estimates. (Doc. No. 35, at 6).

The fact that Mr. Dandridge included a cost sheet in his report as exemplary does not make his opinions on OSHA safety protocols and procedures inherently unreliable. Indeed, such a fact is precisely an issue that goes to the weight of his opinions, not the admissibility. Defendant's arguments as to the basis of Mr. Dandridge's opinion should instead be addressed by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (quoting *Daubert*, 509 U.S. at 596). This logic applies equally to any complaints of duplicity or failure to adhere with the

opinions of Mr. Smith. Mr. Dandridge has indeed provided explanations for these issues raised by Defendant. (Doc. No. 30-3, at 108:18–110:9; 149:1–150:1.) Again, it will be the task of Defendant to explore these issues fully during the course of testimony at trial.

Lastly, Defendant wants to limit Mr. Dandridge's testimony to the buildings he actually inspected because he only inspected 11 buildings, but the lawsuit includes 20 buildings. (Doc. No. 30, at 3.) Plaintiff responds by pointing out that Mr. Dandridge has limited his opinions to only the 11 buildings he inspected. (Doc. No. 35.) Thus, the issue appears to be moot as Plaintiff agrees his testimony is limited to these 11 buildings, and Defendant does not address this response in its reply. Nonetheless, the inspection of 11 buildings alone is not a basis to exclude Mr. Dandridge's testimony. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 802 (N.D. Tex. 2013) (finding that "the fact that [the expert] inspected only two units [in forming his expert opinion] goes to the weight, not admissibility, of his opinion testimony"). To the extent that Mr. Dandridge were to expand his testimony and offer opinions outside the scope of his report, then a proper objection may be raised at trial. As it stands in the present motion, there is no indication that such a problem has arisen for the court's resolution at this juncture.

## CONCLUSION

For the reasons explained herein, Defendant's motion to strike the expert testimony of Kevin Dandridge (Doc. No. 30) is **DENIED.**

**So ORDERED and SIGNED this 6th day of February, 2025.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE